UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DIONTE TYLER                                                                PLAINTIFF

v.                                                            3:12-CV-00129-CRS

DH CAPITAL MANAGEMENT, INC.                                   DEFENDANT

## MEMORANDUM OPINION

This case is before the court on the Defendant, DH Capital Management, Inc.'s ("DHC"),

Motion to Dismiss the Plaintiff, Dionte Tyler's ("Tyler"), Complaint pursuant to Federal Rules

of Civil Procedure 12(b)(6) and 13(a) (DN 4). Tyler's Complaint alleges that DHC violated the

Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, and alleges usury under KRS

360.020 (DN 1). The court will grant DHC's motion to dismiss for the reasons stated herein.

## BACKGROUND

The following facts are undisputed (DNs 4-1, 9):

(1) On March 23, 2011, DHC, a debt collection company, filed an action to collect

$1,041.89 in credit card debt from Tyler in Jefferson County District Court.[1]

(2) On June 28, 2011, Tyler filed for Chapter 7 Bankruptcy relief from the Western

District of Kentucky's Bankruptcy Court.

---

[1] Tyler's credit card debt at issue changed title prior to this action: (1) Tyler's debt originated with Chase Bank USA, N.A. ("Chase") on December 3, 2009; (2) Chase sold the debt to Turtle Creek Assets, LTD ("Turtle Creek") on October 12, 2010; (3) Turtle Creek sold the debt to DHC on October 26, 2010. DHC ultimately filed suit to collect Tyler's debt on March 23, 2011 and demanded 21% interest on Tyler's debt for the period of February 27, 2009 through the date of judgment in addition to attorneys' fees (DN 1).

(3) On October 4, 2011, Tyler received discharge in bankruptcy. However, Tyler

   listed neither the debt owed to DHC nor Tyler's cause of action against DHC for

   alleged FDCPA violations and usury in his original bankruptcy schedules or any

   amendments thereto.

(4) On October 12, 2011, DHC served Tyler with process regarding DHC's state court

   debt collection action.

(5) On October 18, 2011, DHC became aware of Tyler's bankruptcy and filed a Notice to

   Dismiss its debt collection action in Jefferson County District Court prior to the filing

   of Tyler's Answer.

(6) On October 20, 2011, Tyler filed his Answer to DHC's debt collection action. Tyler

   never disputed that DHC was entitled to collect his debt. However, Tyler's Answer

   did not plead the filing of the bankruptcy action or the discharge of the debt as

   required by Kentucky Rule of Civil Procedure 8.03.[2] Nor did Tyler assert a

   counterclaim or otherwise present or preserve the claims that he alleges in the action

   at issue here.

(7) On October 26, 2011, DHC's Notice of Dismissal was entered by the Jefferson

   County District Court, dismissing DHC's Complaint without prejudice. Tyler neither

   contested DHC's dismissal nor took steps to present his claims to the court.

(8) On March 9, 2012, Tyler filed the Complaint at issue, which alleges that DHC

   violated the FDCPA and that the interest rate DHC asserted against Tyler was

   usurious under KRS 360.020.

---

[2] Under Ky. R. Civ. P. 8.03: "In pleading to a preceding pleading, a party shall set forth affirmatively . . . discharge in bankruptcy."

(9) On July 12, 2012, DHC filed a motion to dismiss Tyler's Complaint.

**I**

Tyler's Complaint against DHC argues (1) that DHC's demand for 21% interest violates Kentucky's usury law, KRS §§ 360.010, 360.020, which place a 19% cap on interest for loans less than $15,000.00; and (2) that DHC violated the FDCPA, §§ 1692(f)(1), 1692(e)(5), 1962(e)(2)(A), by both attempting to collect an allegedly usurious 21% rate of interest and attorneys' fees, and by attempting to collect interest on a debt prior to purchasing the debt.[3]

In response, DHC's motion to dismiss, pursuant to Fed. R. C. P. 12(b)(6), argues (1) that Tyler's claims against DHC are barred due to Tyler's failure to file a compulsory counterclaim in his Answer to DHC's state court debt collection action; and (2) that Tyler lacks ownership of his credit card account after filing bankruptcy and thus lacks standing to bring FDCPA and usury violation claims because the claims are an asset of the bankruptcy estate (DN 4-1).

Under Fed. R. Civ. P. 12(b)(6), if the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2008). To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are 'merely consistent with' a defendant's liability," rather, a plaintiff must allege facts supporting a 'plausible' claim for relief." *Id.* at 687 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (1955)). A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard. *See id.* at 687. "[C]onclusory allegations or legal

---

[3] Tyler also asserts a class action for usury and FDCPA violations "on behalf of all the persons in the Commonwealth of Kentucky similarly situated." (DN 1). However, the court need not address the class allegation as the complaint will be dismissed on other grounds.

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).[4]

DHC also requests that the court dismiss Tyler's Complaint under Fed. R. Civ. P. 13

because Tyler failed to present the claims in his Complaint as counterclaims (DN 4-1). Under

Rule 13 for compulsory counterclaims:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
> (A) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.[5]

Fed. R. Civ. P. 13

**A.**

DHC argues that Tyler's claims against it are procedurally barred by *res judicata*—claim

preclusion under both Fed. R. Civ. P. 13 and Kentucky's Compulsory Counterclaim Rule, Ky. R.

Civ. P. 13.01 (DN 4-1). DHC contends that Tyler's claims arise from the "same transaction or

occurrence" as DHC's prior state court debt collection proceeding (DN 4-1). Thus, DHC argues

---

[4] Courts must treat motions under 12(b)(6) that rely on evidence outside of the pleadings as motions for summary judgment. However, there is an exception for documents that a defendant attaches to a motion to dismiss, which are considered part of the pleadings "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (*quoting Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Here, DHC's motion to dismiss included Tyler's: (1) Answer to DHC's state court Complaint, (2) Notice of Bankruptcy, (3) Bankruptcy Docket Report, and (4) Notice of Discharge in Bankruptcy (DN 4-1). Here, DHC relies on evidence which we consider part of the pleadings. *See id.* Thus, DHC's motion to dismiss will be addressed as such, and not treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

[5] The Federal Rule mirrors Kentucky Rule 13.01 for compulsory counterclaims. In Kentucky, a counterclaim is compulsory "if is arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require . . . the presence of third parties of whom the court cannot acquire jurisdiction." Ky. R. Civ. P. 13.01.

that Tyler's failure to assert compulsory counterclaims in his answer to DHC's debt collection

action bars his claims (DNs 4-1, 9).

Tyler responds and argues that his claims are not barred by *res judicata* because DHC

voluntarily dismissed its state court debt collection action (DN 5). Tyler contends that DHC's

voluntary dismissal was without prejudice, which has no *res judicata* effect (DN 5). Tyler argues

that by filing a notice of dismissal under Ky. R. Civ. P. 41, instead of moving for leave of the

court to dismiss the action, DHC deprived Tyler of his opportunity to oppose the dismissal and

amend his Answer (DN 5). In sum, Tyler argues that under Kentucky law, a voluntary dismissal

without prejudice does not trigger *res judicata* to bar his claims (DN 5).

Here, the issue is whether Tyler's claims against DHC are procedurally barred by *res*

*judicata* under Rule 13 of the Federal Rules of Civil Procedure due to Tyler's failure to assert his

claims in his responsive pleading to DHC's prior lawsuit.

DHC supports its argument that *res judicata* bars Tyler's claims by noting that the

Supreme Court interpreted Rule 13 as being "designed to prevent multiplicity of actions and to

achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Constr.*

*Co. v. Pickard*, 371 U.S. 57, 59-60 (1962). The Court also stated that the Rule is "particularly

directed against one who failed to assert a counterclaim in one action and then instituted a

second action in which that counterclaim became the basis of the complaint." *Id.* (*citing United*

*States v. Eastport S.S. Corp.*, 255 F.2d 795, 801-02 (2nd Cir. 1958)).

The Sixth Circuit has held that failure to plead a compulsory counterclaim under Rule 13

bars the claim under *res judicata*. *Sanders v. First Nat. Bank & Trust Co.*, 936 F.2d 273, 277

(6th Cir. 1991). "It is well established that an apposing party's failure to plead a compulsory

counterclaim forever bars that party from raising the claim in another action." *Id.* Further, in federal court the preclusive effect of a prior state court action requires considering Kentucky's *res judicata* law. *Holbrook v. Shelter Ins. Co.*, 186 F. App'x 618, 620-21 (Ky. Ct. App. 2006). "It is now settled that a federal court must give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id.* (*citing Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

DHC argues that it placed ownership of Tyler's credit card debt and related contractual rights directly in issue when it filed suit in state court to collect Tyler's debt (DN 4-1). DHC contends that its right to enforce Tyler's credit card agreement, to collect interest, to collect the interest rate applicable to Tyler's credit card, and to collect attorney's fees triggers *res judicata* because determining whether DHC can enforce those rights involves primarily legal, factual and evidentiary questions to be decided in its state court action against Tyler (DN 4-1).[6] DHC argues that *res judicata* bars Tyler's claims here because Tyler presents the same legal, factual and evidentiary questions that should have been brought as compulsory counterclaims and decided in the state court action under Rule 13 (DN 4-1).

Tyler responds and argues that under Kentucky law, the state court's dismissal of DHC's debt collection action was without prejudice such that the dismissal has no *res judicata* effects (DN 5). Thus, Tyler argues that a dismissal without prejudice does not bar his action against

---

[6] The court need not address whether Tyler's claims against DHC are compulsory counterclaims as it is undisputed that Tyler's claims "arise out of the same transaction or occurrence," which could bar his claims under *res judicata*. Tyler does not dispute that his claims against DHC meet the Sixth Circuit's "logical relationship test" to determine whether claims are compulsory counterclaims. *Sanders*, 936 F.2d at 277. This test requires that the claims (1) involve similar legal and factual questions, and (2) rely on substantially similar evidence. *Id.* Under *Sanders*, if a debtor alleges that a creditor "wrongfully took action" to collect a debt in a prior legal preceding, then both the elements of the "logical relationship test" are satisfied for *res judicata* claim preclusion. *Id.*

DHC. However, Tyler's argument is weakened because he relies on case law that predates the

Rule 13 of the Federal Rules of Civil Procedure,[7] and the modern case law that he cites is not

applicable here.[8] Also, DHC argues, and the court agrees, that the exceptions for filing a

compulsory counterclaim do not apply here as Tyler's claims do not require the addition of

parties. Fed. R. Civ. P. 13; Ky. R. Civ. P 13.01.[9]

**B.**

Tyler also argues that his claim is not barred because he filed his answer to DHC's state

court complaint before the court dismissed DHC's complaint (DN 5). Tyler contends that under

Ky. R. Civ. P. 41.01, a plaintiff may dismiss a claim by filing a notice of dismissal without order

of the court only before the adverse party files an answer or motion for summary judgment.

Thus, Tyler argues that because he filed an answer to DHC's action before the court entered the

notice of dismissal that Tyler was denied the opportunity to oppose the dismissal and amend his

answer to assert his claims against DHC as counterclaims (DN 5).

---

[7] Federal Rule of Civil Procedure 13 was adopted in 1937. Fed. R. Civ. P. 13 advisory committee's note. However, Tyler cites *Magill v. Mercantile Trust Co.*, 81 Ky. 129, 132 (1883) and *Stephenson Lumber Co. v. Hurst*, 83 S.W.2d 48, 50 (Ky. 1934) both of which predate the Federal Rule's adoption.

[8] Tyler cites two contemporary cases, first *Yocum v. Hayden*, 566 S.W.2d 566, 778 (Ky. 1978), which held that an employee's worker's compensation claim was not barred by *res judicata*. Although the employee's prior claim was dismissed without prejudice, the court found that the second claim was not based on the same facts—the prior claim involved a different exposure to the injuring machine—which resulted in a new cause of action; also a new party was added to the second action, which is an exception to claim preclusion under Federal Rule of Civil Procedure 13. Second, *Hardwick v. Boyd Cnty. Fiscal Ct.*, 219 S.W.3d 198, 200 n.4 (Ky. Ct. App. 2007), which held that the dismissal of a prior action in federal court for lack of subject matter jurisdiction did not trigger *res judicata* because it was not adjudication on the merits. These cases are not persuasive here (DN 9).

[9] The exceptions to a compulsory counterclaim are triggered if the claim (1) was the subject of another pending action; or (2) the opposing party brought the action by attachment or other process that did not establish personal jurisdiction over the pleader on that claim. Fed. R. Civ. P. 13; Ky. R. Civ. P. 13.01. Thus, neither of these exceptions apply here.

However, DHC argues that the timing of Tyler's responsive pleading is immaterial (DN 9). First, DHC argues that Tyler received notice of DHC's state court debt collection action when he was served with process on October 12, 2011, such that Tyler had an opportunity to present his claims in his answer on October 20, 2011 (DN 9). DHC contends that Tyler elected to ignore opportunities to present his claims at any relevant time—not only in his responsive pleading, but also in any amendments to his bankruptcy schedule (DN 9). Second, DHC argues that under Ky. R. Civ. P. 13.09, the timing of Tyler's responsive pleading is immaterial because "[i]f the court orders separate trials as provided in Rule 42.02, judgment on a counterclaim or cross-claim may be rendered in accordance with the terms of Rule 54.02 even if the claims of the opposing party have been dismissed or otherwise disposed of." Ky. R. Civ. P. 13.09. Thus, DHC argues that Tyler's compulsory counterclaim could have survived the dismissal of DHC's complaint whether the dismissal was entered with or without prejudice, and that Tyler could have received a trial or other disposition of his claims in state court regardless of the dismissal of DHC's claim (DN 9).

Here, Tyler elected to forego filing compulsory counterclaims in his responsive pleading to DHC's state court debt collection action and his financial affairs schedule. Thus, for the reasons stated above, Tyler's claims for FDCPA and usury violations are procedurally barred under Federal Rule of Civil Procedure 13.

**II**

Regarding whether Tyler has standing to assert usury and FDCPA claims, Tyler argues that he has standing to bring the FDCPA claim because the FDCPA cause of action did not accrue when DHC filed its debt collection claim, but instead accrued when Tyler was served

- 8 -

with DHC's complaint (DN 5). Tyler relies on a Tenth Circuit FDCPA case which states that

when an FDCPA claim arises from a debt collection suit, the FDCPA violation does not occur

"until the plaintiff has been served." *Johnson v. Riddle*, 305 F.3d 1107, 1113-14 (10th Cir.

2002).

In response, DHC argues that Tyler's reliance on *Johnson* is misplaced because The

Federal Rules of Bankruptcy Procedure and the Bankruptcy Code control here (DN 9). DHC

contends that where bankruptcy law and the law on FDCPA claim accrual diverge, disclosure

rules under bankruptcy law controls (DN 9). DHC contends that Tyler lacks standing because the

bankruptcy trustee is the proper plaintiff in this case. DHC argues that bankruptcy law requires

Tyler to disclose DHC's state court action and alleged FDCPA and usury claims in his

bankruptcy proceedings. In sum, DHC argues that the date Tyler's alleged FDCPA claims

accrued is immaterial and that Tyler had a duty to amend his financial affairs statement under the

Federal Rules of Bankruptcy Procedure when he became aware of DHC's collection suit (DN 9).

Under 11 U.S.C. § 521 and the Federal Rules of Bankruptcy Procedure, a bankruptcy

petitioner must list "all suits and administrative proceedings to which the debtor is or was a party

within **one year** immediately preceding the filing of the bankruptcy case." Official Bankruptcy

Form 7 (bold in the original).[10]

Also, 11 U.S.C. § 541(a), clarifies what is considered property of the estate for

bankruptcy purposes. "The commencement of a case . . . creates an estate. Such estate is

---

[10] DHC outlines the Federal Rules of Bankruptcy Procedure applicable here: (1) that 11 U.S.C. § 521(a)(1)(iii) requires a bankruptcy petitioner to file a statement of the debtor's financial affairs; (2) that Fed. R. Bankr. P. §§ 1007(b), 9009 require that the statement of affairs be prescribed on an Official Bankruptcy Form—Form 7; and (3) that Form 7 paragraph 4(a) requires that the bankruptcy petitioner list "all suits and administrative proceedings to which the debtor is or was a part within **one year** immediately preceding the filing of the bankruptcy case." Official Bankruptcy Form 7: Suits and administrative proceedings, execution, garnishments and attachments (bold in the original).

comprised of all the following property, wherever located and by whomever held . . .  all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 54: Property of the Estate. Also, under Kentucky law, a person is a "party" to an action once he is named in a civil proceeding that has been "commenced." Ky. R. Civ. P. 3.01.[11]

Accordingly, DHC argues that it commenced its action to collect Tyler's debt by filing a complaint and causing service of process to be issued to Tyler (DN 9). Thus, when Tyler became aware of DHC's suit by service of process on October 12, 2011—not even five months after Tyler commenced his bankruptcy proceeding on June 28, 2011—that Tyler had a duty to amend the statement of financial affairs under the Bankruptcy Rules (DN 9).

The court finds a case from the United States Bankruptcy Appellate Panel for the Sixth Circuit instructive here. In *Mueller v. Hall* (*In re Parker*), 386 B.R. 86 (B.A.P. 6th Cir. 2007), a debtor asserted that under Kentucky law, when a civil claim accrues after a debtor's bankruptcy petition is filed, that the post-petition claim is not the property of the bankruptcy trustee. In other words, the debtor argued that the bankruptcy trustee had no interest in the debtor's post-petition claim because the claim was never property of the bankruptcy estate. *Id.* The Bankruptcy Appellate Panel rejected the debtor's argument, noting that under 11 U.S.C. § 541(a), the definition of "property of the estate" is broad, and the Panel further held that:

> By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time. Consequently, the question in this case is not whether the [claim] accrued, based on the moment the last element of the cause of action accrued, prior to [] filing bankruptcy, but whether the [claim] is sufficiently rooted in [the debtor's] prebankruptcy past to constitute property of the estate.

---

[11] "A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." Ky. R. Civ. P. 3.01.

*Mueller*, 386 B.R. at *7-8.

The *Mueller* case further states that although the Sixth Circuit Court of Appeals has not yet addressed this issue, other courts have held that "legal claims sufficiently rooted in a debtor's prepetition past are property of that debtor's bankruptcy estate." *Id.* at *8; *see, e.g., In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000) (holding that "in determining whether a claim is property of the bankruptcy estate, the test is not the date the claim accrues under state law."); *In re Tomaiolo*, 504 B.R. 10 (Bankr. D. Mass. 1997) *aff'd*, 90-40350, 2002 WL 226133 (D. Mass. Feb. 6, 2002) (holding that claims are property of the bankruptcy estate despite not having accrued by the time of the bankruptcy filing); *In re Strada Design Assoc., Inc.*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2007) (holding that "Section 541(a) is not restricted by state law concepts such as when a cause of action ripens . . . and 'property of the estate' may include claims that were inchoate on the [bankruptcy] petition date."); *see also In re Simmerman*, 463 B.R. 47, 55 (Bankr. S.D. Ohio 2011) (holding that the debtor would not have standing to pursue a cause of action for an unfiled FDCPA claim because the claim would be property of the bankruptcy estate under 11 U.S.C. § 1306).[12]

Here, Tyler's alleged cause of action against DHC for violations of FDCPA and usury are property of the bankruptcy estate. DHC filed its complaint on March 23, 2011, before Tyler filed his bankruptcy petition. Tyler was a party to the civil debt collection action for purposes of *res judicata* and his claims are rooted in the allegations in DHC's state court complaint. Thus,

---

[12] *Simmerman* also notes that the Sixth Circuit "has concluded that judicial estoppel may apply in bankruptcy to bar a debtor from pursuing a cause of action for his own benefit after the debtor intentionally failed to disclose the cause of action, which was properly part of the bankruptcy estate." 463 B.R. at 56.

- 11 -

Tyler's claims against DHC are a direct derivative of DHC's debt collection action and as such are property of Tyler's bankruptcy estate.

Even if Tyler's claims against DHC did not accrue under the FDCPA until he was issued service on October 12, 2011, Tyler nonetheless had a duty to amend his statement of financial affairs to include "all suits and administrative proceedings" which the debtor is or was a part within one year preceding the filing of the bankruptcy case. Fed. R. Bankr. P. §§ 1007(b), 9009; Official Bankruptcy Form 7. Accordingly, the date that Tyler's alleged FDCPA claim accrued is irrelevant here and Tyler lacks standing to assert his alleged claims for FDCPA violations and usury. *Id.* The court will grant DHC's motion to dismiss because Tyler is not the proper party in interest—his claims belong to his bankruptcy trustee.

A separate order will be entered this date in accordance with this opinion.

December 20, 2012

Charles R. Simpson III, Judge
United States District Court